**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CRIMINAL ACTION |
| ) | No. 10-20071-03-KHV |
| ) | |
| VAJRA A.J. ROBINSON, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

On May 19, 2010, a grand jury charged defendant with conspiracy to manufacture and manufacture of 100 or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii) and 18 U.S.C. § 2 (Counts 1 and 2) and being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) (Count 4). See Indictment (Doc. #1). On October 25, 2010, a jury found defendant guilty on Count 4, but reported that it was unable to reach a verdict on the remaining counts. The Court declared a mistrial on Counts 1 and 2.

On December 1, 2010, a grand jury charged defendant with conspiracy to manufacture and manufacture of 100 or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii) and 18 U.S.C. § 2 (Counts 1 and 2). See Superceding Indictment (Doc. #95). On May 27, 2011, after a second trial, a jury found defendant guilty on Counts 1 and 2. This matter is before the Court on defendant's Renewed Motion For Judgment Of Acquittal And Memorandum In Support Thereof (Doc. #204) and defendant's Motion For New Trial And Memorandum In Support (Doc. #205) both filed August 12, 2011. For reasons set forth below, the Court overrules defendant's motions.

**Standards For Motions For Judgment Of Acquittal**

In considering a motion for judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P., the Court cannot weigh the evidence or consider the credibility of witnesses. See Burks v. United States, 437 U.S. 1, 16 (1978). Rather, the Court must view the evidence in the light most favorable to the government and determine whether the record contains sufficient evidence from which a jury might properly find defendant guilty beyond a reasonable doubt. United States v. Erickson, 561 F.3d 1150, 1158 (10th Cir. 2009). The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that can be drawn therefrom, viewed in the light most favorable to the government. See id. While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities other than guilt. Id. at 1158-59; see United States v. Burkley, 513 F.3d 1183, 1188 (10th Cir. 2008).

**Standards For Motions For New Trial**

Rule 33, Fed. R. Crim. P., provides that the Court may grant a motion for a new trial "if the interest of justice so requires." A motion for new trial under Rule 33 is not regarded with favor and is granted with great caution. United States v. Herrera, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (citing United States v. Trujillo, 136 F.3d 1388, 1394 (10th Cir. 1998)). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. United States v. Custodio, 141 F.3d 965, 966 (10th Cir. 1998).

**Factual Background**

The following is a brief summary of the evidence presented at trial.

Deputy Chris Thomas testified as follows. In late July of 2009, a source told Deputy Thomas that Vajra Robinson was involved with a marijuana grow operation in the home of Christopher Feaster and Margaret Beedles at 1713 E. 1500 Road, Lawrence, Kansas. Deputy Thomas obtained electric utility records which showed that between January and July of 2009, the residence used three times as much electricity as neighboring residences. On July 28, 2009, Deputy Thomas conducted a trash pull at Robinson's residence at 1801 E. 25th Terrace, Lawrence, Kansas. He recovered documents with Robinson's name on them, a stem from a marijuana plant and handwritten notes related to drug use.

On August 20, 2009, Deputy Thomas applied to the Douglas County District Court for a search warrant for 1713 E. 1500 Road. On August 21, 2009, officers executed the search warrant and found a marijuana grow operation in the basement. Officers located many empty five-gallon jugs inside and outside the residence.

On August 24, 2009, Deputy Thomas applied for and received a search warrant for Robinson's residence. The warrant authorized the seizure of items related to the marijuana grow operation, including documents and five-gallon water jugs. On August 25, 2009, officers executed the warrant and recovered marijuana, drug paraphernalia, two .45 caliber pistols, plastic bags with holes which were identical to ones recovered at the Feaster-Beedles residence, documents and numerous empty five-gallon water jugs. Robinson admitted to Deputy Thomas that he had been transporting water to the Feaster residence, but denied that he was involved in the marijuana grow operation.

Christopher Feaster testified that in 2005, he started growing marijuana in his basement to provide a supply for himself and friends and to make money. He stated that in 2008, he and his

wife, Maggie Beedles, became acquainted with defendant. Feaster testified that he and defendant smoked marijuana together, and that he showed defendant the marijuana growing room. Feaster stated that he asked defendant to invest in the grow operation, and they worked out an arrangement in which defendant would provide money to expand the grow operation in exchange for marijuana. According to Feaster, defendant had a truck which he and Feaster used to take the trash from the grow operation to place it in dumpsters in town. Feaster testified that two or three times a week, defendant filled several five-gallon bottles with water from a reverse-osmosis filter system at his home and took it to the Feaster-Beedles residence for use in the marijuana grow operation. Feaster testified that defendant helped him build a table to hold the marijuana plants. Feaster also stated that in the fall of 2008, defendant accompanied him to a garden store where defendant used his credit card to pay over $900.00 for supplies to use in the marijuana grow operation.

Margaret Beedles testified that she sometimes watched defendant's child while defendant and Feaster went to the basement.

Defendant testified that he was not involved in growing marijuana at the Feaster-Beedles residence, and that he has never been in their basement. Defendant stated that he had seen Beedles buying bottles of water at the grocery store and offered to fill water bottles for them once in a while to help them out. Defendant testified that he took water to the Feaster-Beedles home every week or two and that he thought Beedles and Feaster used the water for drinking and cooking.

Defendant testified that he did not use his credit card to pay for supplies for the marijuana growing operation at the Feaster-Beedles residence. At the first trial, defendant had testified that in 2008 and 2009 he had two Visa credit cards and a Chase debit card, and no other credit or debit cards that he could recall. On cross-examination during the second trial, defendant acknowledged

that during 2008 and 2009, he also had an American Express card on which he sometimes charged as much as $15,000.00 in a single month. He further testified that on September 10, 2008, he had charged over $900.00 on his American Express card at the Green Circle to purchase supplies for a garden that he was making in his backyard.

During closing argument defense counsel argued that the government had gaps in its evidence and pointed out that the government has not produced evidence of defendant's fingerprints on items related to the marijuana growing operation. Defense counsel also noted that Feaster and Beedles had testified with the hope of receiving substantial reductions in their sentences. Defense counsel suggested that Feaster and Beedles thus had a strong motive to lie. He also noted that in regard to defendant's purchase at the garden store, the government had not asked defendant about the garden which he had started in his back yard.

In response, during final closing argument, government counsel made the following remarks:

> When you go to a magic show the magician comes out, and he throws something on the ground, and this big puff of smoke comes up, and then all of the sudden something appears that wasn't there before, and he threw that something on the ground and made that puff of smoke to divert your attention so all of the sudden, he creates this optical illusion he's done this magic trick. And that is precisely what [defense counsel] wants to do by making arguments like where are the bottles? Where are the fingerprints? You know, there's no genuine issue Vajra Robinson hauled water to the Feaster residence. He admitted to that. And so, what would the bottles prove, and furthermore, what would the fingerprints prove? Nothing. Because that's not in dispute. Don't lose your direction. Don't lose your sight from what's important in this case. It's not the government who gives freedom. She sits up there in a black robe. She's the one that decides what happens with regard to someone's freedom. And [defense counsel] argues, well, you know, Beedles and Feaster, they have a lot of motive to lie. Well, they have a lot more motive not to lie, because if she feels, upon reviewing what they've done in this case, they've been deceptive, dishonest, untruthful, they told you – what their concern about will happen. So, they have more of a motive to come in here and tell the truth. They are being judged, not just by you. And [defense

>   counsel] says, well, [the prosecutor] didn't ask Vajra about his garden. Well, it's not my garden. It's not my story. Why didn't he tell you what his plans were with that garden?

Trial Transcript at 549-50.  Defense counsel objected, noting that defendant has no burden to do anything.  The prosecutor responded that defendant had chosen to testify and that he had presented evidence regarding the garden supplies.  The Court overruled the objection.

## Analysis

Defendant asserts that he is entitled to judgment of acquittal on both Counts 1 and 2 because the government offered insufficient evidence to support the convictions.  Defendant also asserts that he is entitled to a new trial because of trial errors.

**I.      Motion For Judgment Of Acquittal**

Defendant argues that the government presented insufficient evidence to establish the crimes charged – manufacturing marijuana (Count 1) and conspiracy to manufacture marijuana (Count 2).  The Court finds to the contrary.  Feaster testified that defendant participated extensively in growing marijuana in the basement of the Feaster-Beedles residence.  Moreover, although defendant testified that he did not engage in the crimes charged, his testimony was not credible.  Viewing all reasonable inferences from the direct and circumstantial evidence in a light most favorable to the government, a reasonable jury could easily find defendant guilty on Counts 1 and 2.

**II.     Motion For New Trial**

Defendant asserts that he is entitled to a new trial because (1) the Court allowed co-conspirators Feaster and Beedles to testify without first holding a James hearing, see United States v. James, 590 F.2d 575, 577 (5th Cir. 1979); (2) during closing argument, the government improperly (a) commented regarding defendant's failure to testify concerning certain facts,

(b) shifted the burden of proof to defendant, (c) vouched for the credibility of government witnesses and (d) suggested that defense counsel was not truthful; and (3) the Court improperly pressured the jury to reach a verdict.

### A.   Co-conspirator Statements

Defendant asserts that the Court erred in overruling his motion for a James hearing and in admitting the statements of co-conspirators without independent evidence of a conspiracy. Under the Federal Rules of Evidence, a conspirator's statement is not hearsay if –

> The statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

Fed. R. Evid. 801(d)(2)(E). Normally, before admitting co-conspirator statements, the Court must determine by a preponderance of the evidence that (1) a conspiracy existed, (2) defendant and declarant were members of the conspiracy and (3) declarant made the statements during the course and in furtherance of the conspiracy. See United States v. Williamson, 53 F.3d 1500, 1517-18 (10th Cir. 1995). In making its preliminary factual determination as to whether a conspiracy exists, the Court may consider the proffered statement, along with independent evidence tending to establish the conspiracy. United States v. Lopez-Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996) (court may consider co-conspirator statements in determining existence of conspiracy) (citing Bourjaily v. United States, 483 U.S. 171, 181 (1987)).

The Tenth Circuit has approved of foregoing a James hearing and allowing conditional admission of co-conspirator statements, subject to government "connecting up" later. See United States v. Pinto, 838 F.2d 426, 433 (10th Cir. 1988). Here, the record contains sufficient evidence

of a conspiracy. Moreover, defendant does not specify any out-of-court statements by coconspirators to which he objects; rather, he appears to object to testimony of Feaster and Beedles during trial. The Court finds no error in admission of their testimony.

      B.    <u>Closing Argument</u>

          1.    <u>Prosecutor's Comments On Defendant's Testimony</u>

              a.  <u>Comments Regarding Defendant's Testimony About Garden Supplies</u>

Defendant asserts that the prosecutor improperly shifted the burden of proof to defendant by stating in closing argument that defendant should have explained his plans to start a garden in his back yard with the items he purchased at the garden store. Specifically, the prosecutor stated: "And [defense counsel] says, 'well, [the prosecutor] didn't ask Vajra about his garden.' Well, it's not my garden. It's not my story. Why didn't he tell you what his plans were with that garden?"

Defendant contends that the prosecutor's statements warrant a new trial. The Court disagrees. The prosecutor is authorized to respond in closing argument to exculpatory arguments made by defense counsel. Here, the prosecutor was responding to defense counsel's argument that the prosecutor should have asked defendant about his garden – referring to defendant's testimony that he had purchased $900 of garden supplies to make a back-yard garden and not for use in growing marijuana.

Defendant notes that it is proper for the prosecutor to comment upon defendant's failure to produce certain evidence only if the evidence could come from a source other than "the mouth of the defendant." See Defendant's Memorandum (Doc. #205), at 3 (quoting United States v. Mayes, 917 F.2d 457, 466 (10th Cir. 1990)). In Mayes, however, defendant did not testify and the prosecutor's statements thus implicated defendant's Fifth Amendment right. In this case, defendant

testified so the rationale of <u>Mayes</u> does not apply. <u>See</u> <u>United States v. Cooper</u>, No. 02-40069, 2004 WL 432236, at *11 (D. Kan. Feb. 10, 2004) (when defendant takes stand, testimony may be assailed like that of any other witness) (citing <u>Portuondo v. Agard</u>, 529 U.S. 61, 69 (2000)).

### b. Comments Regarding Testimony About Credit Cards

Feaster testified that defendant purchased garden supplies with defendant's credit card for use in the marijuana growing operation. In an attempt to rebut Feaster's testimony, defendant testified that he used the credit card to purchase supplies for a back-yard garden and not to grow marijuana. Defendant argues that the prosecutor's comment in closing argument – that "[defendant] needs to explain the credit card transactions, that's been corroborated since Mr. Feaster provided that information" – improperly shifted the burden of proof to defendant. The Court finds nothing improper in the prosecutor's comments.

### 2. Vouching For Credibility Of Government Witnesses

Defendant argues that the prosecutor improperly vouched for the credibility of three government witnesses – Feaster, Beedles and Detective Thomas. The Tenth Circuit has recognized that the prosecution may not personally vouch for the credibility of its witnesses. <u>United States v. Bowie</u>, 892 F.2d 1494, 1498 (10th Cir. 1990).

As to Feaster and Beedles, the prosecutor stated in closing argument that they had a motive to tell the truth because they were seeking a reduction in their sentences based on cooperation. The prosecutor noted that the judge decides their sentences. Defendant asserts that this constituted improper vouching for the credibility of Feaster and Beedles.

"Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not

-9-

presented to the jury supports the witness' testimony." Id. Presenting evidence concerning a witness' obligation to testify truthfully pursuant to an agreement with the government and arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper vouching. Id. at 1498-99 (use of "truthfulness" portions of agreements impermissible vouching only if prosecutor explicitly or implicitly indicates that they can monitor and accurately verify truthfulness of witness' testimony).

Here, the government did not improperly engage in vouching as to the testimony of Feaster and Beedles. The prosecutor merely recited the witnesses' testimony that they had an obligation to testify truthfully and the possible consequences of a breach of that obligation. Id. at 1499 (finding no vouching under similar circumstances). Defendant has not identified any instances where the prosecutor explicitly or implicitly suggested that she could monitor and accurately verify the truthfulness of the cooperating witness' testimony.[1] Defendant is not entitled to a new trial on this ground.

The government also stated that "it doesn't make sense" that Detective Thomas would lie. Defendant states that this was improper vouching for a witness and giving an opinion as to his truthfulness. This comment does not interject the prosecutor's personal opinion about the credibility of Detective Thomas. Moreover, the Court extensively instructed the jury on evaluating witness credibility, and emphasized that they were the exclusive judges of the credibility of the witnesses and that lawyers' statements were not evidence. Even assuming that the prosecutor's statement about Thomas was improper, the instructions were sufficient to cure any error. See United States

---

[1] Further, in closing argument, defense counsel argued that Feaster and Beedles had a motive to lie because they sought a reduction in their sentence and that the government could give them their freedom. Thus, defense counsel invited the government's comments about their motive to testify truthfully.

v. Broomfield, 201 F.3d 1270, 1276-77 (10th Cir. 2000) (district court mitigated impact of any improper vouching when it "repeatedly instructed the jurors that they were the sole and exclusive judges" of witness credibility and that "statements and arguments of counsel are not to be considered evidence in this case").

### 3. Prosecutor's Comments About Defense Counsel

Defendant asserts that the government's comments about defense counsel during closing suggested untruthfulness and misconduct. Defendant specifically points to the prosecutor's statements during the rebuttal portion of closing argument:

> When you go to a magic show the magician comes out, and he throws something on the ground, and this big puff of smoke comes up, and then all of the sudden something appears that wasn't there before, and he threw that something on the ground and made that puff of smoke to divert your attention so all of the sudden, he creates this optical illusion he's done this magic trick. And that is precisely what [defense counsel] wants to do by making arguments like where are the bottles? Where are the fingerprints?

Defendant asserts that such comments about defense counsel can constitute prosecutorial misconduct if they disparage defense counsel or suggest untruthfulness. See Defendant's Memorandum (Doc. #205) at 8 (citing United States v. Graham, No. 08-3010, 314 Fed. Appx. 114, 118 (10th Cir. 2008)). In Graham, however, the same prosecutor used a very similar final closing argument, as follows:

> When you go to a magic show, [a] magician comes out, and he throws something on the ground, and this big puff of smoke comes up and diverts your attention, and then all of a sudden, something appears that wasn't there before, and he does that for the purpose of diverting your attention and make you think he's created some magic act, and really, what he's done is blow smoke in your face to give you that optical illusion. And [defense counsel] in his opening and on voir dire talked about where there's smoke, there's fire. And . . . the arguments [defense counsel] has made[,] smoke and mirrors, that's what that is, to divert your attention away from what the real evidence is.

Graham, 314 Fed. Appx. at 118. The Tenth Circuit found no plain error, holding as follows:

-11-

> We see little of concern in this exchange of metaphoric rhetoric. Generally, a "prosecutor is afforded considerable latitude" in responding to arguments by defense counsel. United States v. Brewer, 630 F.2d 795, 803 (10th Cir. 1980). But "[a]ttacks on defense counsel can at times constitute prosecutorial misconduct" when they disparage counsel or suggest untruthfulness. Wilson v. Sirmons, 536 F.3d 1064, 1119 (10th Cir. 2008). Here, the prosecutor's comments did not call defense counsel's character or truthfulness into question. Nor did the prosecutor make the comments in an effort to persuade the jury to render a conviction on grounds beyond the evidence, which we have implied is improper. Rather, these comments were isolated and made in an apparent effort to focus the jury on the admissible evidence and explain why the evidentiary gaps that defense counsel tried to open were not an impediment to a guilty verdict. Accordingly, they were a permissible response to defense counsel's use of similar imagery to show weakness in the evidence and do not warrant reversal under the plain error standard of review.

Id. at 118. The Court finds the comments were an attempt to focus the jury on the evidence and to counter defense counsel's assertion that the jury should find defendant not guilty based the lack of certain evidence.

### C. Deliberations And Verdict

Defendant argues that by allowing the jury to continue deliberating until 7:00 p.m. on the day on which the case went to the jury, the Court improperly pressured the jury to reach a verdict. Defendant suggests that at 5:00 p.m. the Court should have asked the jury whether it wanted to continue deliberating that evening or to come back on Monday. The minute sheet (Doc. #174), however, indicates that the jury returned its verdict at 5:40 p.m. – not 7:00 p.m. Further, the cases which defendant cites do not advance his argument. See Mills v. Tinsley, 314 F.2d 311, 314 (10th Cir. 1963) (no coercion where trial court gave jury Allen charge and jury then continued to deliberate until 8:50 p.m. on second day of deliberations and reached guilty verdict); United States v. Minieri, 303 F.2d 550, 556 (2d Cir. 1962) (rejecting defendant's contention that after jury had deliberated for nine hours, trial judge coerced jury at midnight by offering to seclude them for night so that they could resume deliberations next day).

**IT IS THEREFORE ORDERED** that defendant's <u>Renewed Motion For Judgment Of Acquittal And Memorandum In Support Thereof</u> (Doc. #204) and defendant's <u>Motion For New Trial And Memorandum In Support Thereof</u> (Doc. #205) both filed August 12, 2011 be and hereby are **OVERRULED**.

Dated this 23nd day of August, 2011 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge